```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
MICHELE WIKE,

                Plaintiff,              MEMORANDUM AND ORDER
                                        No. 23-cv-04539 (KAM)
      - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

------------------------------------X
```

**Kiyo A. Matsumoto, United States District Judge:**

Michele Wike appeals the final decision of the Commissioner of the Social Security Administration ("SSA") denying her Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1.)  The parties cross-moved for judgment on the pleadings.  (ECF No. 15 ("Pl. Mem."); ECF No. 16, ("Def. Mem.").) For the reasons below, the Court grants the Commissioner's motion and denies Ms. Wike's motion.

BACKGROUND

Michele Wike and the Commissioner of the Social Security Administration ("Commissioner") filed a joint stipulation of facts, which the Court has reviewed and incorporates by reference. (*See* ECF No. 14.) On May 4, 2021, Ms. Wike applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, alleging she had been disabled since

January 15, 2020. (ECF No. 18, Administrative Transcript ("Tr.") at 73, 85, 97–98.)[1] She was 57 years old at the alleged disability onset date, is college-educated, and has past relevant work as a routine office clerk and home health aide. (*Id.* at 55, 66–67, 73.)

The Commissioner denied Ms. Wike's claims on July 30, 2021, August 12, 2021, and again upon reconsideration on November 12, 2021. (*Id.* at 84, 96, 111, 125.) On July 22, 2022, a hearing was held before Administrative Law Judge ("ALJ") Thomas C. Gray. (*Id.* at 49–72, 186.) Ms. Wike appeared and testified at the hearing with counsel; a vocational expert also testified. (*Id.* at 49–72.)

On October 4, 2022, ALJ Gray found Ms. Wike was not disabled within the meaning of the Social Security Act. (*Id.* at 16–32.) He determined Ms. Wike had not engaged in "substantial gainful activity" since January 15, 2020. (*Id.* at 18.) He next determined that Ms. Wike had several severe impairments[2] and non-severe impairments,[3] which the ALJ still considered in making the residual

---

[1] The Court cites to the Bates-stamped pages of the Administrative Transcript.
[2] Specifically, the ALJ found Ms. Wike had the following severe impairments: "degenerative disc disease of the lumbar spine, osteopenia of the lumbar spine, degenerative joint disease of the bilateral hips, osteoarthritis of the first MTP joint in the right foot, psoriasis/necrobiosis lipoidica/ lichen planus/prurigo nodularis/seborrheic keratosis, bilateral carotid artery stenosis with palpitations and coronary artery disease, hypertension/hypertensive heart disease, chronic kidney disease, abnormal thyroid function, diabetes mellitus, and obesity." (Tr. at 19.)
[3] Specifically, the ALJ found Ms. Wike had the following non-severe impairments: "gingival swelling, hyperlipidemia, sebaceous cyst, seasonal allergies, hemorrhoids, low vitamin D, and tension headache." (Tr. at 19.)

2

functional capacity ("RFC") determination. (*Id.* at 19-20.) The ALJ further found that Ms. Wike did not have an impairment or combination of impairments automatically qualifying her as disabled. (*Id.* at 20-22).

Finally, the ALJ found Ms. Wike has the RFC to perform light work with the additional limitations that she not balance or climb ladders or scaffolds, but that she could occasionally climb ramps and stairs. (*Id.* at 22.) The ALJ relied on medical evidence, including opinions from consulting examiners Silvia Aguiar, M.D., and Ram Ravi, M.D., non-examining experts S. Putcha, M.D., and R. Dickerson, M.D., and a treating source, Issa Jaradeh, M.D., Ms. Wike's primary care provider. (*Id.* at 16-32.) ALJ Gray also referenced Ms. Wike's specialist care, including with nephrologist Dr. Jubil Malieckal, M.D.; cardiologist Dr. Joseph Abboud, M.D.; and dermatologist Dr. Jeffrey Weinberg, M.D. (*Id.* at 24–25.)

Based on the RFC determination and testimony from a vocational expert, ALJ Gray found Ms. Wike capable of performing her past relevant work as a routine office clerk. (*Id.* at 31.) The ALJ found she could perform the job as actually and generally performed, and the vocational expert agreed when assessing a hypothetical person with Ms. Wike's RFC. (*Id.* at 31, 68.) Because the ALJ found Ms. Wike could perform her past work, he found she was not disabled within the meaning of the Social Security Act. (*Id.* at 31–32.)

After Ms. Wike appealed the ALJ's decision, the Appeals Council denied review, rendering it the Commissioner's final determination. (*Id.* at 1.) Ms. Wike filed the instant action on June 20, 2023, seeking review of the final determination. (ECF No. 1.) On March 8, 2024, the parties cross-moved for judgment on the pleadings. (Pl. Mot.; Def. Mot.) Ms. Wike also filed a response to the Commissioner's motion. (ECF No. 17.)

## **LEGAL STANDARD**

### I. Standard of Review

A claimant may seek judicial review of the Commissioner's final decision by filing a civil action in federal district court. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations and citation omitted). Accordingly, a court "may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence or if incorrect legal standards were applied." *Swainbank v. Astrue*, 356 F. App'x 545, 547 (2d Cir. 2009). The district court "may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result." *Duran v. Comm'r of Soc. Sec.*, 618 F. Supp. 3d 94, 98 (E.D.N.Y. 2022) (citation omitted).

4

"The substantial evidence standard is 'not high'" and is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rucker v. Kijakazi*, 48 F.4th 86, 91 (2d Cir. 2022) (citation omitted); *see Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (noting that substantial evidence "means more than a mere scintilla" (citation omitted)). "An ALJ's finding is considered supported by substantial evidence if any reasonable factfinder could have made the same finding, even if substantial evidence also supports the claimant's position." *Benjamin v. O'Malley*, 726 F. Supp. 3d 132, 138 (E.D.N.Y. 2024).

In turn, inquiry into legal error involves considering if the claimant had a "full hearing under the . . . regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). "The Act must be liberally applied, for it is a remedial statute intended to include not exclude." *Cruz v. Sullivan*, 912 F.2d 9, 11 (2d Cir. 1990) (citation omitted).

**II. Determination of Disability and Entitlements**

A claimant must be "disabled" to qualify for DIB or SSI. *See* 42 U.S.C. §§ 423(a), (d), 1382(a).[4] An individual is disabled where she is unable "to engage in any substantial gainful activity by

---

[4] The Court notes that "[t]he statutory provisions governing [DIB] and SSI use the same standards to determine disability, so cases addressing disability as to one form of benefits are equally instructive as to the other." *Benjamin v. O'Malley*, 726 F. Supp. 3d 132, 137 n.6 (E.D.N.Y. 2024) (internal citation omitted).

5

reason of any medically determinable physical or mental impairment" which is expected to result in death or continue for not less than twelve months. § 423(d)(1)(A); *see* § 1382c(a)(3)(A). This "impairment" must be of "such severity" that the individual cannot engage in her prior work nor "any other kind of substantial gainful work which exists in the national economy." § 423(d)(2)(A); § 1382c(a)(3)(B). To determine whether a claimant is disabled, "the Commissioner must consider (1) the objective medical facts in the record; (2) diagnoses or medical opinions based on those facts; (3) subjective evidence of pain or disability; and (4) the claimant's education, age, and work experience*." Duran*, 618 F. Supp. 3d at 97.

SSA regulations require a "five-step process" for evaluating disability claims, which requires determining "whether (1) the claimant is working, (2) the claimant has a 'severe impairment,' (3) the impairment is one that requires a determination of disability under the applicable regulations, (4) the claimant can continue his or her prior work, and (5) other work exists in the national economy that the claimant can perform." *Benjamin*, 726 F. Supp. 3d at 137 (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)). Claimant bears the burden of proof at steps one through four; "at step five, the burden shifts to the Commissioner." *Colgan v. Kijakazi*, 22 F.4th 353, 358 (2d Cir. 2022).

**DISCUSSION**

Ms. Wike argues that the ALJ failed (1) to consider adequately her change in condition around April 2022 in evaluating the medical evidence and (2) to evaluate adequately her subjective report of symptoms relating to the change in condition around April 2022. (Pl. Mem. at 2, 6.)

**I.    Change in Condition**

Ms. Wike first argues that the ALJ failed to adequately consider her change in condition from April 2022 onward, when she "complained 'for the first time' of pain in the mid right groin," and that as a result, the ALJ's determination of her RFC to perform light work, with certain restrictions, is improper. (*Id.* at 3, 5.)

Specifically, Ms. Wike argues the ALJ inadequately considered the portions of Dr. Ravi's opinion from a consultative exam on April 25, 2022, noting that she "could lift up to 10 pounds occasionally" and that she should avoid "activities of mild or greater exertion" due to an unspecific cardiac condition. (*Id.* at 2-6.) She argues that the ALJ inadequately considered Dr. Ravi's opinion in light of Dr. Jaradeh's "May 2022 conclusion that Plaintiff had 'mild to moderate' osteoarthritis in both hips" and the results of a May 5, 2022 cardiology stress test revealing an "abnormal myocardial perfusion simultaneously showing ischemia and being non-diagnostic for ischemia." (*Id.* at 2-6.)

7

Ms. Wike's argument is without merit. The ALJ based his determination that Ms. Wike had the RFC to perform a "reduced range of light work" on substantial evidence. (Tr. at 27.) For example, regarding Ms. Wike's ability to lift, the ALJ found the medical opinions from consultative examiner Dr. Aguiar, non-examining expert Dr. Putcha, and non-examining expert Dr. Dickerson to be generally persuasive: Dr. Aguiar opined that Ms. Wike has a "mild limitation to heavy lifting and carrying," and Dr. Putcha and Dr. Dickerson opined she can, at minimum, lift 10 pounds frequently. (Tr. at 28-29.)

The aforementioned opinions predate Dr. Ravi's later April 25, 2022 medical opinion that Ms. Wike may only lift up to 10 pounds occasionally, as well as Dr. Jaradeh's July 20, 2022 opinion that Ms. Wike can rarely lift 10 pounds. (Tr. at 28-31, 977-78, 1113, 1115.) The ALJ did not err, however, by relying on the earlier opinions. First, conflicting evidence in the record is for the ALJ to resolve. *See Difiglia v. Comm'r of Soc. Sec. Admin.*, No. 22-cv-6825 (KAM), 2024 WL 1332502, at *11 (E.D.N.Y. Mar. 28, 2024) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

Second, although "a medical opinion may be stale if it does not account for the claimant's deteriorating condition," "[a] more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." *Rodriguez v. Comm'r of Soc. Sec.*, No. 20-cv-3687 (VSB) (RWL), 2021

8

WL 4200872, at *18 (S.D.N.Y. Aug. 19, 2021) (citation omitted), *report and recommendation adopted sub nom. Rodriguez v. Comm'r of the Soc. Sec. Admin.*, No. 20-cv-3687 (VSB), 2022 WL 874931 (S.D.N.Y. Mar. 24, 2022). Here, the ALJ considered records both before and after April 2022, which he found to be consistent. He specifically considered that the "record does not support a limitation to lifting only 10 pounds" where there is "virtually no treatment for any musculoskeletal impairment during the period at issue beyond medication prescribed for back pain before it resolved," "no complaint or diagnosis of hip pain until April 2022," and that the record throughout the relevant period "reflects a conservative course of treatment for all impairments." (Tr. at 27, 30.) Moreover, the ALJ specifically considered Ms. Wike's May 6, 2022 examination with Dr. Jaradeh, which occurred after Dr. Ravi's examination, and considered that Dr. Jaradeh "recommended the conservative course of treatment of physical therapy, with the claimant declining a rheumatology referral," notwithstanding that he found Ms. Wike's recent bilateral x-ray of her hips showed "joint space narrowing . . . consistent with mild to moderate degenerative disease." (*Id.* at 27, 1044-46.)

Further, the ALJ supported with substantial evidence his determination to "decline to limit the claimant regarding mild or greater exertion," notwithstanding Dr. Ravi's opinion that Ms. Wike limit her exertion due to "an unspecified heart condition."

9

(*Id.* at 29.) Specifically, the ALJ considered that Ms. Wike's "cardiologist and cardiology treatment records reflect conservative recommendations for medication, diet, and weight loss, with indication on multiple occasions that the claimant was asymptomatic[.]" (*Id.* at 31.) Indeed, the ALJ considered that "doctors recommended" that Ms. Wike "exercise for weight loss." (*Id.* at 29.) Further, at her examination with Dr. Ravi, Ms. Wike specifically "denie[d] chest pain" and "denie[d] shortness of breath," and Dr. Ravi's report notes Ms. Wike had had "an unspecified heart condition since 2020," "was seen by a cardiologist," had "[n]o stents and no surgeries," and was "[c]urrently asymptomatic and stable." (*Id.* at 974.) Moreover, the ALJ considered that Ms. Wike's May 5, 2022 stress test "reflected myocardial perfusion imaging that was abnormal, with an area of ischemia involving the septum," but also that "[t]he stress EKG was non-diagnostic for ischemia." (*Id.* at 27.)

Accordingly, the ALJ supported his determination of Ms. Wike's RFC to perform light work with certain further restrictions with substantial evidence, and a reasonable factfinder could have found unpersuasive the portions of Dr. Ravi's opinion regarding Ms. Wike's lifting and carrying ability, and exertion limitations. *Benjamin*, 726 F. Supp. 3d at 138 ("An ALJ's finding is considered supported by substantial evidence if any reasonable factfinder could have made the same finding, even if substantial evidence

also supports the claimant's position."); *see also My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 104 (W.D.N.Y. 2021) ("It is well settled that the ALJ is not required to formulate the RFC by adopting any one medical opinion in its entirety.").

**II. Subjective Report of Symptoms**

Ms. Wike next argues that the ALJ improperly disregarded testimony of her subjective complaints of "tightness in the leg/thigh" and "symptoms relating to her hip/thigh/leg" by relying on record evidence from 2021 to disregard symptoms of "a condition that appears to have developed in 2022." (Pl. Mem. at 6-7.) The argument is unavailing.

Social Security regulations require a two-step process for evaluating assertions of pain and other symptoms. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citation omitted). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (citation omitted). In doing so, the ALJ must consider certain factors in addition to the objective medical evidence "in evaluating the intensity and persistence of a claimant's" subjective symptoms. *Lao v. Colvin*, No. 14-cv-7507

11

(ADS), 2016 WL 2992125, at *15 (E.D.N.Y. May 23, 2016). "In this analysis, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain." *Maldonado v. Comm'r of Soc. Sec.*, No. 12-cv-5297 (JO), 2014 WL 537564, at *17 (E.D.N.Y. Feb. 10, 2014) (quoting *Meadors v. Astrue*, 370 F. App'x 179, 184 n.1 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii))).

At the hearing, Ms. Wike testified, *inter alia*, that her thigh muscles tighten, cause pain, and become numb when she walks or stands for too long. (Tr. at 22-23, 59–60.) She testified that she could stand for 10 minutes before she experiences numbness in her thighs. (*Id.* at 63.) She further testified that she elevates her legs for two to three hours at a time each day, at or above waist level, to prevent her feet from swelling. (*Id.* at 22-23, 62.)

The ALJ found that Ms. Wike's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

12

consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 23.)

First, the ALJ considered Ms. Wike's symptoms related to her legs in light of objective medical evidence from throughout the record, including specifically from 2022 records. For example, the ALJ noted generally that the overall "record reflects a conservative course of treatment for all impairments," and he specifically considered Dr. Ravi's April 25, 2022 exam and Dr. Jaradeh's May 6, 2022 exam. (*Id.* at 27, 29-31.) The ALJ considered that Dr. Ravi's exam showed, *inter alia*, that Ms. Wike "presented with normal gait and stance," "used no assistive devices," "needed no help changing or getting on/off the table," "performed a squat to 30 degrees," could "rise from a chair without difficulty," had "[h]ip forward flexion [of] 70 degrees bilaterally but range of motion of the hips was otherwise full," "[d]eep tendon reflexes were physiologic and equal in the upper and lower extremities with no sensory deficit and full strength of 5/5 with no muscle atrophy," "[j]oints were stable and non-tender, with no redness, heat, swelling, or effusion" and Dr. Ravi "observed no cyanosis, clubbing, or edema in the extremities." (*Id.* at 26-27.) The ALJ further considered that, on May 6, 2022, Dr. Jaradeh "recommended the conservative course of treatment of physical therapy" and a rheumatologist referral (the latter which Ms. Wike declined), even

13

though Ms. Wike's April 2022 x-ray showed "mild to moderate degenerative disease" in the hips. (*Id.* at 27.)

The ALJ also considered the required factors when evaluating the intensity and persistence of Ms. Wike's symptoms beyond the objective medical evidence. *Maldonado*, No. 12-cv-5297 (JO), 2014 WL 537564, at *17. For example, the ALJ considered Ms. Wike's daily activities. Although Ms. Wike appears to argue that the "notation of activities" from Dr. Ravi's April 25, 2022 exam does "not provide meaningful evidence," Dr. Ravi specifically noted, and the ALJ considered, Ms. Wike's daily activities as she reported them to Dr. Ravi on April 25, 2022, including that she "showered/bathed once daily and dressed twice daily[.]" (Tr. at 27.) The ALJ also considered Ms. Wike's own testimony at the hearing regarding her daily activities that, although she spends "her days in her home," she goes to the grocery store but cannot "lift anything heavy," and "is able to prepare meals, do laundry, and do dishes," albeit with limitations. (*Id.*) The ALJ noted specifically that Ms. Wike's daily activities "support a finding that she retains the capacity for the reduced range of light work" that the ALJ ascribed. (*Id.*)

Further, the ALJ considered treatment other than medication that Ms. Wike received, including that Dr. Jaradeh referred Ms. Wike to physical therapy on May 6, 2022, and also recognized other measures that Ms. Wike testified she employs to relieve pain, specifically, "elevat[ing] her legs every day for two to three

14

hours at a time, at or above waist level, to prevent her feet from swelling[.]" (*Id*.) The ALJ noted, however, that although Ms. Wike "complained of significant edema in her lower extremities that required her to elevate her legs for hours at a time, every day, . . . neither consultative examiner observed any edema in the extremities, and [] the record does not reflect a significant course of treatment of edema." (*Id.* at 28.)

Accordingly, the ALJ properly evaluated Ms. Wike's assertions of pain and other symptoms and supported his findings with substantial evidence. *See Doon v. Comm'r of Soc. Sec.*, No. 21-cv-4492 (WFK), 2023 WL 7489975, at *6 (E.D.N.Y. Nov. 13, 2023) ("'If the [ALJ's] findings are supported by substantial evidence...the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" (quoting *Aponte v. Sec'y, Dep't of Health & Hum. Servs. of U.S.,* 728 F.2d 588, 591 (2d Cir. 1984))).

### III. Developing the Record

Ms. Wike appears to argue briefly that the ALJ erred in failing to further develop the record regarding her cardiac conditions following Dr. Ravi's opinion that she limit her exertion due to "an unspecified heart condition." (Tr. at 29.) Specifically, Ms. Wike appears to argue that the ALJ improperly "wr[ote] off the issue" of Dr. Ravi's "limitations in activities of mild or greater exertion and concomitant limitation in lifting/carrying," because the ALJ "could not interpret" her cardiac health "without further

15

development of the record." (Pl. Mem. at 5.) The argument is without merit.

Although an ALJ has "an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel," where there are "no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir. 2017) (internal quotations and citation omitted).

Here, the Court finds no obvious gaps in the record. First, following Dr. Ravi's opinion from April 25, 2022, the record contains further cardiac testing that the ALJ considered: the record demonstrates that Ms. Wike underwent a stress test on May 5, 2022, which "reflected myocardial perfusion imaging that was abnormal, with an area of ischemia involving the septum," but where "[t]he stress EKG was non-diagnostic for ischemia[.]" (Tr. at 27.)

Ms. Wike's argument that the ALJ should have developed the record regarding her cardiac health beyond the May 5, 2022 test results is unavailing. "[T]he Second Circuit has held that remand based on an ALJ's failure to seek a treating source's opinion is not warranted where the record is extensive and includes an assessment of the plaintiff's limitations." *Dowdell v. O'Malley*, No. 23-cv-7523 (LDH), 2025 WL 974275, at *4 (E.D.N.Y. Mar. 31,

16

2025) (citing *Tankisi v. Comm'r Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)). Here, as noted, the record offers assessments of Ms. Wike's limitations, which the ALJ considered. *See Forrest v. Comm'r of Soc. Sec. Admin.*, No. 23-cv-00307 (JMW), 2025 WL 788996, at *15 (E.D.N.Y. Mar. 12, 2025) (noting no requirement to "solicit opinion evidence where an ALJ can reach an RFC finding supported by substantial evidence" (citations omitted)); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (noting that where "'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity,' a medical source statement or formal medical opinion is not necessarily required" (internal citation omitted)).

## CONCLUSION

For the reasons above, the Court respectfully DENIES Ms. Wike's motion for judgment on the pleadings and GRANTS the Commissioner's cross-motion for judgment on the pleadings. The Clerk of Court is directed to enter judgment in favor of the Commissioner and close this case.

**So ordered.**

Dated:   April 17, 2025
         Brooklyn, New York

_____

**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York